SMALL v. HOUSMAN et al.  (No. 7326.)

(Supreme Court, Appellate Division, First Department.  May 21, 1915.)

1. APPEAL AND ERROR ⬅1195—LAW OF THE CASE—DECISION OF COURT OF APPEALS ON APPEAL.

A decision of the Court of Appeals on appeal from a judgment of the Appellate Division is the law of the case on a subsequent trial and appeal to the Appellate Division.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4661–4665; Dec. Dig. ⬅1195.]

2. BROKERS ⬅38—PURCHASERS ON MARGIN—OBLIGATION OF BROKER.

On the issue whether a stockbroker sold without proper notice stock carried on margin for a customer, it is improper to charge that the jury may consider the length of time the account had been carried and the financial condition of the customer, if known by the broker, especially where the customer was beyond the reach of telegraphic communication, and her son had exhausted all the resources placed at his command.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 31–36; Dec. Dig. ⬅38.]

3. BROKERS ⬅38—PURCHASERS ON MARGIN—OBLIGATION OF BROKER.

Where, in an action against a stockbroker for selling without notice stock carried on margin, the only issue was as to the reasonableness of notice of sale, and there was no charge of fraud, evidence of sale of stock through another broker to a brother of the broker was irrelevant, as calculated to raise a false issue and confuse and prejudice the jury.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 31–36; Dec. Dig. ⬅38.]

4. BROKERS ⬅24—STOCKS ON MARGIN—PROMISE BY BROKER.

A promise by a broker, carrying for a customer stock on margin, not to sell without the consent of the customer, not founded on any consideration, is revocable at any time, and a charge that a sale made in violation of the promise is void is erroneous.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 19; Dec. Dig. ⬅24.]

Appeal from Trial Term, New York County.

Action by Ida Small against Clarence J. Housman and another. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal.  Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

George Zabriskie, of New York City, for appellants.
Charles H. Tuttle, of New York City, for respondent.

SCOTT, J.  This is an action in the usual form by a customer against a firm of stockbrokers for having sold out stocks and bonds carried on margin without due demand and notice.  The action has been twice tried.  On the first trial plaintiff contended that her son, Eugene Small, who had been the intermediary between herself and defendants, had not acted in such matters as her agent.  The Court of Appeals held to the contrary, however (208 N. Y. 115, 101 N. E. 700); and the only questions litigated on the second trial were as to whether or not the defendants had given plaintiff's son reasonable notice of

their intention to sell the securities, and whether or not they have sold certain securities after having agreed not to do so.

The plaintiff, apparently a person of means, had been carrying an account with defendants for some time prior to July 1, 1907, on which date she owed them $282,893.15, as security for which they held stocks and bonds. In all of her dealings with defendants she had been represented by her son, Eugene Small, who was in defendants' employ as a sort of assistant office manager. On July 18, 1907, plaintiff went to Europe, leaving the key of her safe deposit box with a Mr. Heinsheimer, a member of a well-known banking firm. Her son Eugene had no access to her box. Heinsheimer went to Europe on August 28th, leaving with Eugene Small some securities to be used as margins on his mother's account, if needed. In October, 1907, occurred a serious panic, especially acute in Wall Street, in which the prices of stocks fell suddenly and violently. Defendants, as early as October 22d, called upon Eugene Small for additional margin for his mother's account. He complied as far as he was able, delivering to defendants the securities that had been left with him for the purpose, and finally notifying them that he had nothing further to furnish by way of margins. The panicky condition of the stock market continued and intensified, and defendants continued to call for more margin. One of the defendants suggested a sale of a portion of plaintiff's holdings in order to protect the remainder; but Eugene Small was unwilling, or perhaps did not feel authorized to consent. At defendants' request he cabled to his mother's European address, but was unable to reach her.

Without attempting to repeat the evidence, it is sufficient to say that on October 23d and 24th defendants repeatedly and constantly called upon Eugene Small for further margin, and notified him that unless such margin was forthcoming they would be obliged to sell some of the securities, and on the afternoon of October 24th they did sell a large block of Union Pacific stock. On the afternoon or evening of the same day they addressed a formal notice to plaintiff, demanding a deposit of additional margin, with a statement that unless it was received defendants would sell. A copy of this notice, with a letter stating definitely the amount of deposit desired, was also sent to Eugene Small, and received by him early on the morning of the 24th. He protested against selling of any of the securities, but as he was unable to furnish further margin defendants persisted and made the sales which have given rise to this action.

[1] Upon a substantially similar record this court was of the opinion upon a former appeal that under the circumstances the defendants had committed no breach of duty to the plaintiff; but the Court of Appeals was of opinion that the question whether or not reasonable notice had been given was one of fact to be passed upon by a jury, and that ruling, of course, constitutes the law of the case. Upon this subject the court, after giving the general rule as to the duty of a pledgee to give notice of his intention to sell a pledge, said:

"But this rule is a general one, which must be applied to an infinite variety of circumstances. In the case at bar the conditions were exceptional. It was a time of tense excitement, of sudden and violent fluctuations in prices, of veritable panic, in which individual judgment was torn from its moorings by

the impact of popular frenzy. Notwithstanding these circumstances, it was still the duty of the defendants to give the plaintiff reasonable notice. Whether the notice given answers that description depends upon the circumstances."

[2] In attempting to follow the rule thus laid down as applicable to the case, the learned trial justice included among the conditions to be considered by the jury some which, as it seems to us, should not have been taken into consideration, and the inclusion of which was calculated to work prejudice to the defendants. He charged that, in addition to the condition of the market and the relationship of the parties, the jury should consider "the length of time that such account was carried by the defendants for the plaintiff," and also "the financial condition of the plaintiff," if the jury believed that the defendants had knowledge of such conditions. It needs no argument to show that neither of these considerations could have any legitimate bearing upon the question of the reasonableness of the notice, and that the reference to them amounted to the submission to the jury of irrelevant questions.

The defendants' rights and duties with regard to plaintiff were just the same, whether her account was an old or a recent one, and whether she was rich or poor. This error was emphasized by the refusal of the court to call the attention of the jury, as it was requested to do, to the undisputed fact that on October 23d, 24th, and 25th the plaintiff's son had exhausted all the resources at command, that plaintiff herself was beyond the reach even of telegraphic communication, and that no means had been provided by her for the protection of her account, except the securities which had already been used for that purpose. If these considerations had been submitted to the jury, it might well have found that the notice actually given was reasonable, because even a much longer notice could not have availed plaintiff.

[3] It was also error to admit evidence that 1,000 shares of stock sold on October 24th was sold, through another broker, to a brother of the defendant Baruch. This was wholly irrelevant, and calculated to raise a false issue, to confuse and prejudice the jury. There was no charge of fraud in the complaint, and no issue to be determined by the jury, except as to the reasonableness of the notice of sale. If the notice was insufficient, which was the gravamen of plaintiff's complaint, it was of no consequence to whom the sales were made, or at what price. Plaintiff's recovery would be estimated as if the securities had not been sold at all, but had been converted by the defendants.

[4] A part of plaintiff's claim, inconsiderable as compared with the total claim, was for the loss sustained by her through the sale on October 29th of $30,000 of bonds, in violation, as it is said, of an agreement by defendants to sell no more securities without plaintiff's consent. The defendants denied ever having made such a promise. Assuming, however, that they did make it, we are unable to see that it was founded upon any consideration, or that defendants were not at liberty to revoke it at any time. As to this feature of the case the Court of Appeals said:

"This promise, if made, was probably not an irrevocable contract; but it could not be totally ignored, to the prejudice of the plaintiff."

The trial court, while it did not use the word "irrevocable," did in effect charge that the promise, if made, could not be revoked, and that a sale made in violation of it was void. This also was error.

Other exceptions (of which there are many in the record) are pressed upon our attention; but we find it unnecessary to consider them, since they may not recur upon a new trial which the errors already considered will necessitate.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. · Order filed. All concur.